## WILLIAM T. PARKER vs. JAMES BARKER.

Where a debtor, in 1834, conveyed to assignees, in trust for his creditors generally, certain real estate specially described, " and also all his goods, wares, and merchandise, moneys, debts, effects, and estate," and by a deed, simultaneously made, conveyed to a particular creditor, for the purpose of securing the debts due to him, certain real estate specially described, which was not so described in the deed to the assignees, it was *held,* that this last mentioned estate passed to such creditor, and not to the assignees. *Held also,* that although the debts, which were secured by such conveyance, were afterwards discharged, yet that a title to the real estate, acquired under the grantee, *bonâ fide,* was good and effectual ; and especially so, against a party claiming the estate under the same source of title.

A conveyance of land by A. to B. is a sufficient consideration, on the part of B., for a mortgage of the land to C.; and the payment by C. of debts due to A., and of other sums, at the request of a party who has an interest in the land, is a good consideration, on the part of C., to support the mortgage to the extent of such payments — if there be no fraud in the transaction : And though the amount thus paid be far less than the sum mentioned as the consideration in the mortgage deed, yet this fact is only presumptive evidence of fraud, and may be rebutted.

An oral promise, made by a mortgagee to the mortgagor's creditors, to relinquish his claim to the land mortgaged, if they will accept from the mortgagor another mortgage thereof, and give him time of payment, is inoperative and void by the statute of frauds ; and though such creditors, on the faith of such promise, take a second mortgage, and give time of payment to the mortgagor, they acquire no right thereby, as against the first mortgagee. But such promise is presumptive evidence, (which may be rebutted,) that the first mortgage was not made *bonâ fide.*

If the doctrine, that a party, who has a title to property, and stands by and encourages and promotes a sale thereof to a third person, thereby waives his title, or is estopped to maintain it, can be applied at all, by a court of law, to real estate, it can be so applied only where such party conceals an outstanding title.

THIS was a writ of entry to recover two lots of land in South Boston, distinguished as lots No. 24 and No. 25, mort-

gaged to the demandant by Charles Gaylord, January 16, 1837, to secure the payment of $ 10,000.   The same premises were subsequently mortgaged to the Lafayette Bank by said Gaylord, for the sum of $ 6473; and the tenant, being a creditor of that bank, levied an execution upon the right of the bank in the land described in the last named mortgage, and became the owner of it by a purchase at a sheriff's sale, for the sum of $ 25, under the provisions of the Rev. Sts. *c.* 36, § 52.   The tenant also claimed under a quitclaim deed from Gaylord.

At the trial, before *Wilde,* J. it was contended by the tenant that the mortgage to the demandant was a voluntary convey ance, without consideration, and fraudulent and void against the creditors of Gaylord; and the case was submitted to the jury upon the testimony offered.   They returned a verdict for the demandant, and the tenant moved for a new trial, upon the ground that certain instructions given to the jury were erroneous.

The testimony, upon which the instructions complained of were given, was this : In 1831, Charles Gaylord and John H. Belcher occupied the demanded premises as partners in the printing business ; lot No. 25 belonging to Gaylord, and lot No. 24 to Belcher.   In 1832, Gaylord conveyed his lot to Belcher, who assigned both lots and all his property to trustees, for the benefit of his creditors.   William Parker was a creditor of Belcher for a large amount, and made an agreement with his assignee to become a party to the assignment and indemnify the assignee against his liabilities for Belcher, in case the other assigned property should be insufficient, and to make no claim for any dividend ; the assignee relinquishing to said Parker all claim to the real estate in question and to certain personal property at South Boston.

On the 31st of July 1832, an indenture was executed by Charles Gaylord and William Parker, in which (after reciting that Gaylord was indebted to Parker in the sum of $ 12,651·36, and that Parker was possessed of the said real and personal estate, which had been assumed by him under an agreement to meet certain enumerated liabilities of Gaylord, and other claims

under Belcher's assignment) it was stipulated that Gaylord might occupy and use the real and personal property, and that when he should pay therefor, he should have the same. Parker, at the same time, gave Gaylord a bond, reciting that he had assumed to pay the amount due from Gaylord to Belcher, and stipulating to convey the property to Gaylord, on his paying for it. Gaylord went into possession of the premises, and carried on his business, until the failure of said Parker, in January 1834. Parker made a general assignment of his property for the benefit of his creditors, in the terms hereafter mentioned in the opinion of the court; but by a deed, of the same date with said assignment, he conveyed said real estate to John Hews, and also assigned to said Hews the said contract with Gaylord. At that time, Hews was under liabilities to a large amount, for said Parker, on a probate bond, and as his surety on a note for $1000, and was also the holder of a note against him for $500. Notice of this transfer to Hews was given to Gaylord, about the time it was made.

Hews paid nothing on account of the probate bond; but he paid the $1000 note, as the surety of Parker, taking a power of attorney from the holder to execute Parker's assignment, in which said note was preferred. He executed the assignment, as such attorney, and for his own debt, and subsequently received a dividend on the preferred note. It was provided in the assignment to Hews of the aforesaid contract with Gaylord, that any surplus, after paying him, should be held subject to the order of said William Parker. It was also proved, that the aforesaid contract was assigned to Hews with the knowledge and assent of one of the assignees of said Parker, to whom he represented the claims of Hews against him as very large.

Gaylord continued his business upon said premises, as before, until January 16th, 1837, when Hews, having received from the demandant the amount of said two notes of hand against William Parker, (the father of the demandant,) made a deed of said real estate, at the request of said Parker and the demandant, to Charles Gaylord, for the consideration, as expressed in the deed, of $600, but without any payment in fact, and deliv-

ered the deed to said William Parker and the demandant, Gaylord not being present. Gaylord made the mortgage in question to the demandant, bearing even date with that of Hews's said deed to him ; and both deeds were recorded at the same time.

The only consideration, alleged by the demandant, for the notes and mortgage of Gaylord to him, was the conveyance of said land to Gaylord by Hews, and the liability of Gaylord to William Parker, under said contract of July 31st, 1832. And the testimony of William Parker tended to show, that after his general assignment for the benefit of his creditors, and after the demandant became of age, he told him that if he would pay certain of his (said William Parker's) debts, amounting in the whole to over $ 6000, he (the demandant) should have the whole control of the said real and personal property ; and that the demandant did pay for his father the sum of $ 3841·20 to different persons, in compromise and discharge of their claims, and among them that of said Hews. There was no writing, transfer, nor conveyance of any kind, between William Parker and the demandant. The contract of July 31st, 1832, re mained in Hews's possession, under the assignment thereof to him, and was never given up by him until just before the trial, and then not to Gaylord. No receipt or discharge of any kind was given to Gaylord, at the time he executed the notes and mortgage to the demandant, nor has been since.

Gaylord, after this, continued to occupy the premises and carry on his business, as before, until June 1st, 1837, when he made an assignment of all his property, for the benefit of his creditors, to the demandant and others. But he still continued in the occupation of the premises, and subsequently arranged a settlement with his creditors, and procured them to authorize the assignees to give up the assignment and restore the property to him. The demandant, however, did not execute the deed conveying back the real estate to Gaylord, which was executed by the other assignees only ; but the demandant did give back the personal property, and made no claim to it.

It was testified by the former president of the Lafayette

Bank, that Gaylord had been a debtor to the bank to the amount of more than $ 6000, since the autumn of 1836 ; that he had frequently been called upon for payment ; and that he had promised to give security by a mortgage. The bank agreed, in October 1837, to take their mortgage (which the tenant now holds by virtue of his levy above mentioned) on Gaylord's estate, subject to two prior mortgages for about $ 4000. One Jenkins was surety of Gaylord on the notes which the bank held against Gaylord.

Previous to October 1837, and while the negotiation about taking the mortgage was pending, the president, acting for the bank and by their appointment, went with Gaylord to the demandant's store, and the demandant there assured the president that if the bank would take the mortgage of Gaylord, and give him the time of payment, which is provided in the mortgage, and give up the old notes, upon which Jenkins was held, the demandant would relinquish his claims on the demanded premises. And the bank, upon such assurance of the demandant, took said mortgage of said Gaylord, and gave the time of payment, which had been stipulated, and also gave up the old notes of Gaylord, to which Jenkins was a party. The president went to the demandant's store to be satisfied about the security which Gaylord offered, and did not know that said Jenkins was insolvent.

The judge instructed the jury, as to the mortgage from Gaylord to the demandant, that if they believed the demandant in good faith paid William Parker's debts to the amount of between $ 3000 and $ 4000, on account of the mortgage, it would be a good consideration *pro tanto*, although no security was given, or express promise made to pay these debts, at the time the mortgage was given, and although there was no assignment to the demandant, in writing, of William Parker's debts against Gaylord. But that if there was an inadequacy of consideration, that circumstance and the other circumstances of the transaction would be presumptive evidence of fraud, but not conclusive, and that the presumption might be repelled by other evidence. The like instruction was given as to all the other

evidence of fraud on which the tenant relied. And the case was submitted to the jury on the evidence, with the general direction to find for the demandant, if they, on weighing the whole evidence, should be of opinion that the conveyance to the demandant was *bonâ fide*, and not made to delay, hinder, or defraud creditors ; otherwise, to find for the tenant.

As to the demandant's declaration and promise to the president of the Lafayette Bank, it was contended by the demandant's counsel that the promise related to the personal estate only. The jury, however, were instructed that if it related to the real estate, it was not a binding promise, but that it was good presumptive evidence that the demandant's mortgage was not made *bonâ fide ;* but that this presumption was not conclusive, and that, like the other evidence of fraud, it might be rebutted by other evidence, if satisfactory to the jury.

The jury were also instructed that the legal estate in the land, mortgaged at the time of William Parker's failure, was in John Hews, and did not pass by Parker's assignment. New trial to be granted, if these instructions were wrong ; otherwise, judgment to be entered on the verdict.

*Fletcher & English*, for the tenant.

*E. Blake & Sparhawk*, for the demandant.

DEWEY, J. The mortgage to the demandant was prior to that under which the tenant claims title, and, if valid in law, will entitle the demandant to the possession of the demanded premises. The question of fraud was submitted to the jury, who on this point found in favor of the demandant. The further inquiry is — 1st. Whether there was any sufficient legal consideration to give effect to this mortgage. 2d. Whether the demandant has not, by his acts and declarations, discharged his lien upon the land, or at least so postponed his mortgage that it is to take effect subsequently to the mortgage to the Lafayette Bank, the interest in which latter mortgage has become vested in the tenant.

The legal title to the demanded premises was, as it seems to us, vested in John Hews, by the deed from William Parker to him. This conveyance was made upon a sufficient considera-

tion ; the grantor, Parker, being then indebted to Hews in the sum of $ 500, and Hews being also the surety of Parker upon a note for the sum of $ 1000, and also liable as surety on a bond to the judge of probate ; to secure which debt and liabilities, this conveyance was made to Hews.   It also further appeared that Hews, as such surety, paid the note of $ 1000.

It was objected to the validity of Hews's deed, that it did not pass the demanded premises to him, inasmuch as, on the day of the execution thereof, his grantor, William Parker, made a general assignment of his property to assignees, in trust for his creditors, and that by this assignment he parted with all his interest in the premises, and nothing therefore remained to pass to Hews.   It seems to us, however, that upon the facts disclosed, the conveyance to Hews might well pass the demanded premises, notwithstanding the deed of the same date to the assignees. The conveyance to the assignees does not in terms describe the property now in controversy.   It does convey, by particular recital, certain other real estate, and then conveys certain personal property of the grantor, and concludes with a sweeping clause conveying " all other goods, wares, and merchandise, moneys, debts, effects, and estate of him the said William Parker," &c. But from the manner in which the term " estate " is introduced, and its association with personal property, it may be very naturally inferred, upon the principle of *noscitur a sociis*, that it was not intended to embrace the land conveyed to Hews ; and it ought 'so to be inferred, treating the two conveyances as executed at the same time, in order that effect may be given to both.

It was then further objected, that the debt to Hews, and all claims he might have as the surety of Parker, were discharged ; Parker having discharged all responsibilities upon the probate bond, and Hews himself having released all his other claims, by becoming a party to the assignment made by Parker ; and therefore, it is said, no consideration would subsequently exist to support the conveyance to Hews, and his interest in the premises must be ineffectual to pass a good title to the demandant.

There are two answers to this objection :   1st. That the

original conveyance to Hews vested the legal title in him, and the notes being discharged, a *bonâ fide* title acquired under him would be good and effectual.   2d.  The tenant claims also under the same source of title.   Charles Gaylord, the mortgagor to the Lafayette Bank, derives title through the deed of John Hews, upon which also the demandant relies ; and it is only by virtue of the deed of Hews to Gaylord, that Gaylord has at any time heretofore had any pretence of legal title to lot No. 24, one of the parcels of land in controversy.   Hews,  being thus seized of the premises, upon receiving from the demandant the balance that was unpaid on the two notes above mentioned, by an arrangement participated in by the demandant and William Parker conveyed the same to Gaylord, and Gaylord at the same time  gave the mortgage to the demandant, under which he now claims title.   By this arrangement, Gaylord became the owner (subject to his mortgage to the demandant) of lots No. 24, and No. 25, to the former of which he had at no former period any title ; and to the extent of the value of this lot, there was a consideration received by Gaylord for the  mortgage he gave to the demandant.   On the part of the demandant there was a consideration for the mortgage to him, by reason of the present payment to Hews of the sums unpaid on the notes he held, and the subsequent payment by him of debts due from William Parker, all of which (the debt paid to Hews inclusive) amounted to $ 3481·20, as appears by the testimony of William Parker.

The jury having by their verdict negatived the alleged fraud, the inquiry is reduced to this point ; whether, supposing this conveyance to the demandant to have been untainted with fraud, the consideration shown would not be sufficient in law to support the mortgage to some extent, and to authorize a conditional judgment for such sum, if any may be really due thereon.   And the court are of opinion that the great discrepancy between the consideration actually paid, or amount to be secured by the mortgage, and that which was in form set forth in the mortgage as the debt of the mortgagor, though presumptive evidence of fraud, was not conclusive, but might be rebutted by the demandant , and if so rebutted, the mortgage might be good for the

consideration actually paid ; and therefore, if such payment was actually made by the demandant to Hews and the other creditors of William Parker, as is alleged by the demandant, this might furnish a good consideration, to the amount then paid, and to that extent the mortgage might be valid in law.

The further inquiry is, whether the demandant has, by any acts or declarations of his, waived his priority as mortgagee, and postponed his mortgage to take effect subsequent to that to the Lafayette Bank. The only question here presented is concerning the effect to be given to the evidence as to what passed at the interview between the demandant and the president of the Lafayette Bank, before the acceptance of the mortgage from Gaylord to that bank, on which occasion the demandant said to the president of the bank, who was acting as its agent in the matter, that if the bank would take the mortgage of Gaylord as proposed, " he would relinquish his claims on the demanded premises." This declaration of the demandant, it is said, must operate to estop him from setting up his mortgage against the tenant, either, *first*, as an admission acted upon by the Lafayette Bank, and therefore conclusive against the demandant ; or *secondly*, upon the doctrine that if a party, having title, stands by encouraging and promoting a sale to a third person, he waives his prior title ; or *thirdly*, that it was a parol discharge of the debt secured by the mortgage.

The cases bearing upon the first two of these positions were very fully presented in the argument of the counsel ; but in the view we have taken of the evidence, it is unnecessary particularly to consider the effect of those decisions, or to settle the question whether the principles stated in those cases can be applied by a court of law to a title to real estate. The case before us has not the material element necessary to give effect and application to the principle contended for ; there being no evidence of any concealment of an outstanding title. The party here was not misled by any such concealment, but has been damnified solely by the breach of the promise of the demandant that he would relinquish his title. But it was a parol promise to relinquish title to real estate, and was therefore inoperative and void

by the statute of frauds. Rev. Sts. c. 74, § 1. As tending to prove that there was no existing debt, and that the demandant would claim no such debt, it was allowed by the presiding judge to have its full effect as presumptive evidence that the demandant's mortgage was not made *bonâ fide ;* and beyond this it could have no proper effect. The great question in this case was the question of fraud, which was for the jury. Treating this mortgage as made *bonâ fide,* as found by the jury, we think that it may be sustained as made upon a sufficient consideration.

*Judgment on the verdict.*